IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

**LIZZIE W. HAMLIN,**

       Plaintiff,

v.                                                              No. 2:09-cv-02615-STA-cgc

**BAPTIST MEMORIAL HOSPITAL,**

       Defendant.

**REPORT AND RECOMMENDATION
ON DEFENDANT'S MOTION TO DISMISS**

       Before the Court is Defendant Baptist Memorial Hospital's ("Baptist") Motion to Dismiss ("Motion") filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Docket Entry, "D.E." #30). The instant motion was referred to United States Magistrate Judge Charmiane G. Claxton for Report and Recommendation (D.E. #38). For the reasons set forth herein, the Court RECOMMENDS that Baptist's Motion to Dismiss be GRANTED.

    **I. Introduction**

       This case arises from Hamlin's claims of race and sex discrimination and retaliation in violation of Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e, *et seq.* Hamlin alleges that she was wrongfully discharged from her employment at Baptist on or about January 20, 2008. Before her claims of employment discrimination were filed in this Court, Hamlin, with the assistance of counsel, filed a Chapter 13 Voluntary Bankruptcy Petition ("Petition") under penalty of perjury in the United States Bankruptcy Court for the Western District of Tennessee ("Bankruptcy Court") on

October 22, 2008.  On Schedule B—Personal Property, Hamlin was required to list at number 21 "[o]ther contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims" and to provide the "estimated value of each."  Plaintiff checked "NONE" in response to this inquiry.  On the Statement of Financial Affairs, Hamlin was required at number 4(a) to "[l]ist all suits and administrative proceedings to which the debtor is or was a party within one year immediately preceding the filing of this bankruptcy case."  Plaintiff checked "None" in response to this inquiry.

Despite opening her bankruptcy case without mentioning her employment-discrimination grievances, Hamlin proceeded to simultaneously pursue both her bankruptcy remedies and her Title VII claims.  On October 27, 2008, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging unlawful discrimination and retaliation.  On January 28, 2009, the Bankruptcy Court entered an Order Confirming Chapter 13 Plan, which ordered Hamlin to pay into the Plan $427.00 per month for approximately sixth months.  On June 19, 2009, the EEOC mailed Hamlin a Dismissal and Notice of Rights, which Hamlin claims she received on or about June 25, 2009.  On August 14, 2009, the Bankruptcy Court ordered that the percentage to be paid to the unsecured creditors in Plaintiff's Chapter 13 Plan would be twenty-two percent of the amounts owed to them.

On September 21, 2009, Plaintiff filed a Pro Se Complaint in this Court alleging employment discrimination in violation of Title VII and seeking one million dollars in compensatory damages and five million dollars in punitive damages.  On September 21, 2009, Plaintiff also filed an Application to Proceed in District Court without Prepaying Fees or Costs, which mentioned that she is "under Chapter 13" and that she pays $425.00 per month for "Chapter 13."  Plaintiff also referred

to her bankruptcy in a December 29, 2009 Notice filed with this Court. On February 22, 2010 and March 15, 2010, Plaintiff filed pro se amendments to her Complaint. Plaintiff's counsel entered an appearance on April 22, 2010 and filed an Amended Complaint ("Amended Complaint") on May 15, 2010.

On July 1, 2010, Baptist filed a Motion to Dismiss asserting that Hamlin is judicially estopped from bringing her employment-discrimination claims in this Court because Hamlin took a contrary position regarding the existence of any such claims before the Bankruptcy Court. On August 19, 2010, Defendant filed its Supplemental Authority in Support of its Motion. On July 10, 2010, Hamlin's counsel in this Court filed a Motion to Withdraw as Attorney, which was granted on September 3, 2010. On October 28, 2010, Plaintiff filed a pro se Motion for Short Extension to Prepare Case, which the Court granted on November 9, 2010 to provide Plaintiff with thirty days to consider obtaining new counsel and to respond to Baptist's Motion to Dismiss.

On December 9, 2010, Hamlin filed a pro se Response to Baptist's Motion, which stated that she is "once again placing [herself] at the mercy of the courts" and is "asking for help in answering" Baptist's Motion. Hamlin attached to her Response a November 16, 2010 Order Granting Motion for Permission to Proceed with Lawsuit from the Bankruptcy Court. The Order states that, on October 28, 2010, Hamlin's Motion for Permission to Proceeding with Lawsuit was heard before the Bankruptcy Court and was granted to allow Hamlin "permission to proceed with a lawsuit for wrongful termination" with the provision that "any settlement shall be addressed by further order of the [Bankruptcy] Court accordingly."

On December 14, 2010, Baptist sought leave to file a Reply to Hamlin's Response, which was granted on December 20, 2010. On December 21, 2010, Baptist filed its Reply, which argues

3

that neither Plaintiff's Response nor the Order Granting Motion for Permission to Proceed with Lawsuit demonstrates that Plaintiff's failure to notify the Bankruptcy Court of her claims until after Defendant filed its Motion to Dismiss was due to mistake or inadvertence. Accordingly, Baptist reasserts that Hamlin's claims are barred by judicial estoppel and that this Court should grant Defendant's Motion to Dismiss as a matter of law. On January 12, 2011, Hamlin filed a Pro Se Sur-Reply, which restates the harm she alleges as a result of Baptist's termination and requests that the Court provide justice for her grievances.

**II. Analysis**

The sole issue presented in Baptist's Motion is whether Hamlin's claims are judicially estopped and must be dismissed as a matter of law.[1] The doctrine of judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." New Hampshire v. Maine, 532 U.S. 742, 749 (2001). This doctrine is "utilized in order to preserve 'the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship.'" Browning v. Levy, 283 F.3d 761, 775 (6th Cir. 2002). However, the doctrine should be applied with caution to "avoid impinging on the truth-seeking function of the court, because the doctrine precludes a contradictory

---

[1] Although the parties have attached filings from Plaintiff's bankruptcy proceeding as exhibits for consideration in this Motion, the Court may take judicial notice of these documents and consider them without converting Defendant's Motion into a motion for summary judgment pursuant to Rule 12(d) of the Federal Rules of Civil Procedure. See New England Health Care Employees Pension Fund v. Ernst & Young, LLP, 336 F.3d 495, 501 (6th Cir. 2003); Plassman v. City of Wauseon, No. 95-3736, 1996 WL 254662 (6th Cir. 1996); Signature Combs, Inc. v. United States, 253 F. Supp. 2d 1028, 1041 n.5 (W.D. Tenn. 2003). Additionally, while Hamlin attached an email from her previous counsel of record in this Court to counsel for Baptist regarding his desire to withdraw as her attorney, Plaintiff does not rely upon this exhibit and the Court finds that it should be excluded for purposes of considering Defendant's Motion under Rule 12(b)(6) in accordance with Rule 12(d). Accordingly, the Court RECOMMENDS that Defendant's Motion to Dismiss not be converted to a Motion for Summary Judgment.

position without examining the truth of either statement." Eubanks v. CBSK Fin. Group, Inc., 385 F.3d 894, 897 (6th Cir. 2004) (quoting Teledyne Indus., Inc. v. NLRB, 911 F.2d 1214, 1218 (6th Cir. 1990)).

The Sixth Circuit recently summarized the requirements for a finding of judicial estoppel, which must be applied in this case as follows: (1) whether Hamlin assumed a position in this Court that was contrary to the one that she asserted under oath in the bankruptcy proceedings; (2) whether the Bankruptcy Court adopted the contrary position either as a preliminary matter or as part of a final disposition; and, (3) whether Hamlin's omission to the Bankruptcy Court resulted from mistake or inadvertence. White v. Wyndham Vacation Ownership, Inc., 672 F.3d 472, 478 (6th Cir. 2010). In determining whether Hamlin's conduct resulted from mistake or inadvertence, the Court considers the following three factors: (A) whether she lacked knowledge of the factual basis of the undisclosed claims; (B) whether she had a motive for concealment; and, (C) whether the evidence indicates an absence of bad faith. Id. The inquiry into whether Hamlin exhibited bad faith requires, in particular, an examination of her attempts to advise the Bankruptcy Court of her omitted claim. Id.

First, the Court finds that Hamlin did assume a position in this Court that is contrary to the position that she asserted under oath in the bankruptcy proceedings. Hamlin stated in her October 22, 2008 Petition in Schedule B and in the Statement of Financial Affairs that she had no "contingent and unliquidated claims" and no "suits or administrative proceedings." These statements were made pursuant to her affirmative and continuing duty as a debtor to disclose all of her assets to the Bankruptcy Court. See 11 U.S.C. §§ 521(a)(1), 541(a)(7); Scott v. The Dress Barn, No. 04-1298-T-AN, 2006 WL 962534, at *3 (W.D. Tenn. Apr. 12, 2006) (quoting In re Coastal Plains, Inc., 179 F.3d 197, 207-08 (5th Cir 1999) ("The duty to disclose is a continuing one, and a

5

debtor is required to disclose all potential causes of action.")). However, Hamlin's Complaint in this Court asserts employment-discrimination claims arising from her termination by Baptist. The omission of these claims from the Bankruptcy Court Petition and her failure to timely amend the Petition, which essentially represents that such claims did not exist, is contrary to her later-filed EEOC complaint and her Complaint in this Court. See White, 617 F.3d at 479.

Next, the Court finds that the Bankruptcy Court did adopt Hamlin's contrary position. Specifically, "when a bankruptcy court—which must protect the interests of all creditors—approves a payment from the bankruptcy estate on the basis of a party's assertion of a given position, that, in our view, is sufficient 'judicial acceptance' to estop the party from later advancing an inconsistent position." White, 617 F.3d at 479 (citations omitted). In this case, the Bankruptcy Court entered an Order Confirming Chapter 13 Plan on January 28, 2009, which ordered Hamlin to pay into the Plan $427.00 each month for approximately sixth months. On August 14, 2009, the Bankruptcy Court ordered that the percentage to be paid to the unsecured creditors in Plaintiff's Chapter 13 Plan would be twenty-two percent of the amounts owed to them. These two determinations of Hamlin's obligations to her creditors, which were made without the Bankruptcy Court's knowledge of her employment-discrimination claims, evidence precisely the judicial acceptance required to conclude that the Bankruptcy Court adopted Hamlin's contrary position that no such claims existed.

Next, the Court finds that Hamlin's omission to the Bankruptcy Court was not the result of mistake or inadvertence. First, the record reflects that Hamlin had knowledge of the factual basis of her employment discrimination claims from before the time she filed her Petition throughout the pendency of her bankruptcy case. Hamlin admits in her Amended Complaint that she pursued internal grievance procedures with Baptist in relation to her discharge on January 20, 2008, which

was nearly nine months before filing her Petition. Hamlin's Amended Complaint further states that, "[a]fter the grievance procedure[s] were pursued," she filed the EEOC complaint on October 27, 2008, which was a mere five days after filing her Petition. Hamlin continued pursuing both her bankruptcy case and her employment-discrimination claims from the filing of her Petition until three months after Baptist filed its Motion to Dismiss—a period of nearly two years.

Further, Hamlin had a motive for concealment of the employment-discrimination claims, because if her claims became a part of her bankruptcy estate, then the proceeds from the claims could go towards paying Hamlin's creditors rather than compensating Hamlin. White, 617 F.3d at 479 (explaining debtor's motive for concealment); Lewis v Weyerhauser, 141 Fed. Appx. 420, 426 (6th Cir. 2005) ("It is always in a Chapter 13 petitioner's interest to minimize income and assets."); Johnson v. Interstate Brands Corp., No. 07-227B, 2008 WL 152895, at *4 (W.D. Tenn. Jan. 14, 2008) ("By omitting the claims, [the debtor] could keep any proceeds for herself and not have them become a part of the bankruptcy estate.").

Lastly, the record does not demonstrate an absence of bad faith, which requires evidence of "attempts to correct her initial omission" along with evidence of the "extent of these efforts," the "timing" of the efforts, and "their effectiveness." White, 617 F.3d at 480. Because the doctrine of judicial estoppel "seeks to prevent parties from abusing the judicial process through cynical gamesmanship," "efforts to correct an omission that came before the Defendants filed their motion to dismiss are more important than efforts that came after the Defendants filed their motion to dismiss." White, 617 F.3d at 480. In this case, the record reflects that Hamlin's bankruptcy attorney filed a Motion to Proceed with Lawsuit in the Bankruptcy Court on October 1, 2010—three months after the filing of Baptist's Motion to Dismiss on the grounds of judicial estoppel. On October 18,

7

2010, Hamlin's bankruptcy attorney filed an Amended Schedule B and Amended Schedule C.  In the Amended Schedule B, Hamlin responded "NONE" to the requirement to list "[o]ther contingent and unliquidated claims of every nature" and responded "[w]rongful termination lawsuit—settlement undetermined" to the inquiry into "[o]ther personal property of any kind not already listed."  In the Amended Schedule C, Hamlin listed "[w]rongful termination lawsuit—settlement undetermined" to the inquiry into "Other Personal Property of Any Kind Not Already Listed."  On both Amended Schedule B and Amended Schedule C, Hamlin represents the current value of Debtor's interest in property, without deducting any secured claim or exemption, as "0.00."

In addition to the fact that Hamlin only notified the Bankruptcy Court of her employment-discrimination claims after Baptist filed its Motion to Dismiss, Hamlin only provided scant information regarding the nature of these claims.  In Hamlin's Motion to Proceed with Lawsuit, Hamlin states that the "Chapter 13 case was filed on October 22, 2008" and that the "Debtor petitions the Court for permission to proceed with a lawsuit for wrongful termination."  Such bare notice has been held to constitute the type of "limited and ineffective attempts" to provide the Bankruptcy Court with adequate information to prevent the application of judicial estoppel. Specifically, there is no evidence that Hamlin notified the Bankruptcy Court that she had been aware of the factual basis of these claims throughout the pendency of the bankruptcy case, that these claims had been omitted from her initial filings and had not been amended until after Baptist's filing of the Motion to Dismiss in this Court, and that the claims were allegedly worth six million dollars.  See White, 617 F.3d at 480-82.  Accordingly, the Court finds that these limited and ineffective attempts to notify the Bankruptcy Court of the existence of her employment-discrimination claim nearly two

8

years after the filing of the Petition, nearly two years after the filing of her EEOC complaint for employment discrimination, over a year after the filing of her employment-discrimination claims in this Court, and three months after Baptist's Motion to Dismiss on grounds of judicial estoppel do not evidence an absence of bad faith.

Therefore, based upon Hamlin's assertion of a contrary position in the Bankruptcy Court regarding the existence of her employment-discrimination claims, based upon the Bankruptcy Court's adoption of that incomplete and contrary position, and based upon Hamlin's lack of mistake or inadvertence in relying upon these contrary positions, the Court RECOMMENDS that Baptist's Motion to Dismiss on grounds of judicial estoppel be GRANTED.

**DATED** this 27th day of January, 2011.

s/ Charmiane G. Claxton
CHARMIANE G. CLAXTON
UNITED STATES MAGISTRATE JUDGE

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT. 28 U.S.C. § 636(b)(1)(C). FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**